MARK ROSENBAUM (SBN 59940)
Email: mrosenbaum@aclu-sc.org
LORI RIFKIN (SBN 244081)
Email: lrifkin@aclu-sc.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017
Tel: (213) 977-9500
Fax: (213) 977-5297

GLEN FREEMAN MOWRER (SBN 40254)
Email: glenmowrer@cox.net
COMMITTEE FOR SOCIAL JUSTICE
1231 Manitou Lane
Santa Barbara, CA 93101
Tel: (805) 563-0350
Fax: (805) 563-0350

JOSEPH D. ALLEN (SBN 48922)
Email: josephallen@josephallenattorneyatlaw.com
Attorney at Law
110 East De La Guerra Street, Suite A
Santa Barbara, CA 93101
Tel: (805) 892-2480
Fax: (895) 892-2470

FILED

2009 MAR -6  AM 10: 08

CLERK U.S. DISTRICT COURT
CENTRAL DIST. O. CALIF.
LOS ANGELES

BY_____

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

CV09-1578 SVW (SSx)

| | |
|---|---|
| JAMES RYDEN, RODNIE EWING, MICHAEL WHITE, and JAMES TOOHEY, individually, and on behalf of all those similarly situated, <br><br> Petitioners, <br><br> vs. <br><br> CITY OF SANTA BARBARA, SANTA BARBARA POLICE DEPARTMENT, <br><br> Respondents. | Case No. CV <br><br> **COMPLAINT** <br><br> **CLASS ACTION** |

## JURISDICTION

1.  This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 in that this case arises under the Constitution of the United States; § 1343(a)(3) in that it is brought to redress deprivations, under color of state authority, of rights, privileges and immunities secured by the United States Constitution; § 1343(a)(4) in that it seeks to secure equitable relief under an Act of Congress, specifically under Title II of the ADA, and under 42 U.S.C. § 1983; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.

2.  This Court has jurisdiction over Defendant City of Santa Barbara ("the City") because it is a political subdivision of the State of California located in Santa Barbara County; and over Defendant Santa Barbara Police Department ("Police Department") because it operates in the City of Santa Barbara and enforces the City's laws.

## VENUE

3.  Venue is proper in the Central District of California under 28 U.S.C. § 1391(b).  Defendants are located in the Central District and all of the acts and/or omissions complained of herein have occurred or will occur in this District.

## SUMMARY OF THE COMPLAINT

4.  Homelessness is a significant issue in the Santa Barbara region. According to a taskforce on homelessness convened by Santa Barbara County and the cities within the county, "[e]ach year more than 6,300 people in the Santa Barbara County Region experience homelessness.  On any given night, over 4,000 people are homeless." A "conservative estimate" is that 945 individuals in Santa Barbara County are "chronically homeless." The chronically homeless population in Santa Barbara County, as defined by the County, is comprised of adults, such as Plaintiffs, and families with children who have:

> 1) A disabling condition, defined as a diagnosable substance use
>    disorder, serious mental illness, developmental disability, or

1                chronic physical illness or disability, including the co-occurrence

2                of two or more of these conditions; and

3          2)  Been continuously homeless for a year or more or have had at

4                least four episodes of homelessness in the past three years; and

5          3)  Been sleeping in a place not meant for human habitation or in an

6                emergency shelter during that time.

7  An estimated one third of the homeless population in Santa Barbara suffers from

8  mental illness.

9       5.     A February 2009 report by the Santa Barbara City Council

10  Subcommittee on Homelessness and Community Relations "acknowledges the

11  strong need for more shelter beds for vulnerable populations."  During an eight

12  month tracking period, in 2005-2006, 26 homeless men and women in Santa

13  Barbara died on the streets.  In February 2009, a homeless man died after being

14  attacked on the streets, and just this week in March 2009, two homeless

15  individuals were discovered dead in the van where they slept.  It is estimated that

16  eleven homeless individuals have died in the less than three months from January

17  1, 2009 to March 5, 2009.

18       6.     Yet, on April 1, 2009, over one hundred homeless individuals will be

19  compelled to leave safe and secure shelter beds and be turned out into the streets

20  of Santa Barbara because the City of Santa Barbara permits the Casa Esperanza

21  emergency shelter to operate only from December through March.  Despite having

22  no place else to go, these individuals, including Plaintiffs, who suffer from

23  physical and/or mental disabilities, will then be at serious risk for being cited for

24  illegal activity by the Police Department because the City of Santa Barbara has,

25  for all intents and purposes, criminalized the status of being involuntarily

26  homeless and physically or mentally disabled in Santa Barbara.

27       7.     In Santa Barbara, it is against the law for any person to sleep or camp

28  on any public beach between sunset and 6 a.m., or on any public street, sidewalk,

1    or public way in the City.  Santa Barbara Municipal Code ("SBMC") §§
2    15.16.085 and 15.16.070.  The Santa Barbara Police Department actively enforces
3    these ordinances for the City.  City law enforcement officers not only issue
4    citations under the ordinances, but also use the ordinances as a pretextual
5    justification for harassing homeless residents, and conducting unwarranted stops
6    of homeless residents that result in interrogations, demanding identification,
7    running warrant checks, and carrying out unauthorized searches and arrests.

8        8.    Although the City has the authority to change the terms of the Casa
9    Esperanza shelter so that all of its 200 beds would be permitted to operate year-
10   round, the City has not done so.  Closing scarce shelter beds at a time when the
11   City itself has acknowledged a serious lack of beds and resources for its disabled
12   homeless residents is indefensible.  This action will force physically and/or
13   mentally disabled individuals, including Plaintiffs, who presently live in a safe
14   environment with access to crucial services into a dangerous situation where they
15   are physically at risk, do not have reliable access to services, and are vulnerable to
16   being cited and arrested by the Police based on their status as disabled homeless
17   individuals who have nowhere else to sleep.

18       9.    Enforcement of these ordinances against disabled homeless
19   individuals such as Plaintiffs is unconstitutional.  Forcing Casa Esperanza to close
20   safe and supportive beds and put at-risk individuals out in the streets where they
21   are vulnerable to both attack and police action is unconscionable.

22       10.   By leaving its homeless residents with no available shelter as of April
23   1, 2009, and criminalizing the involuntary act of sleeping, the City of Santa
24   Barbara intentionally violates the constitutional rights of Plaintiffs and other
25   disabled homeless residents.

26       11.   Because of this unlawful and unconstitutional conduct of the City and
27   the Police Department, Plaintiffs bring this action for preliminary and permanent
28   injunctive relief and declaratory relief.  This action is based upon the rights

3

secured to Plaintiffs by the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 (the "ADA").

## PARTIES

### Plaintiffs

12.     Plaintiffs are homeless residents of the City and County of Santa Barbara.  Each is "homeless" within the meaning of federal law (Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. § 11302), in that he or she is "without a fixed regular and adequate night-time residence, or a person who resides in a . . . place not ordinarily used for sleeping accommodations, such as the streets, automobiles, abandoned buildings, etc."

13.     Each Plaintiff is mentally and/or physically disabled, and is also "chronically homeless,"  defined by Santa Barbara as having:

    1)  A disabling condition;

    2)  Been continuously homeless for a year or more or have had at least four episodes of homelessness in the past three years; and

    3)  Been sleeping in a place not meant for human habitation or in an emergency shelter during that time.

14.     Each Plaintiff currently is temporarily housed in the emergency shelter at Casa Esperanza and stands to lose that housing on or after April 1, 2009, when the conditional use permit authorized by the City requires that the 200 emergency shelter beds close and Casa Esperanza switches over to an 100 bed transitional housing and medical emergency shelter.

15.     Plaintiff James Ryden is homeless and a disabled veteran.  He is 52 years old and has a medical disability resulting from a work injury in construction, and he has also been evaluated by the Veteran's Administration as suffering from posttraumatic stress disorder.  Mr. Ryden receives $267.00 each month from general relief and food stamps, and has applied for military disability and social

1    security disability in the past three months.  He is currently housed in a medical

2    bed at the emergency shelter at Casa Esperanza, where he is receiving medical

3    treatment for kidney stones, and believes he may lose his bed when it closes as a

4    winter shelter on April 1, 2009.  If he loses his bed, he will be without housing.

5    Although he would then seek a bed at the Santa Barbara Rescue Mission, where

6    he has stayed in the past, they will allow him to stay no more than ten days per

7    month.  When he is not able to stay at the Mission, he will have no alternative but

8    to sleep in public places at night, as he has done in the past.  Mr. Ryden has

9    previously been cited many times by the Santa Barbara Police for illegal camping

10   and at one time owed more than $1,100 in fines for such offenses.  Mr. Ryden is

11   fearful of being excluded from Casa Esperanza and being on the streets without

12   the care and support he is presently receiving.

13        16.    Plaintiff Rodnie Ewing is a fifty-seven year old homeless Army

14   veteran who has lived in Santa Barbara for eleven years.  He is medically

15   disabled, which makes it impossible for him to work in construction, which he had

16   done after being discharged from the Army.  Since 2002, he has received

17   disability from the Veteran's Administration, but this income is not sufficient for

18   him to pay for housing.  He has applied for Section 8 housing and is on a waitlist,

19   which he believes could take up to three years.  Until recently, Mr. Ewing slept on

20   the beach in Santa Barbara.  He moved to the shelter after a friend who was also

21   sleeping on the beach was attacked where they were sleeping and died from the

22   attack three days later.  Mr. Ewing expects to be unable to stay at Casa Esperanza

23   after April 1, 2009, and believes he will have to spend most nights each month

24   after that sleeping on the beach.  While Mr. Ewing was sleeping on the beach, he

25   received multiple tickets for sleeping outdoors.  Since he was not able to pay these

26   tickets, a warrant was issued, and he eventually went to jail to work off the fine.

27        17.    Plaintiff Michael White is a fifty-nine year old homeless man who

28   lives in Santa Barbara and is currently staying at Casa Esperanza.  He has been

1   homeless since 2006.  Prior to 2006, he had housing as a caretaker for his mother,

2   who passed away.  Mr. White suffers from bipolar disorder, and is presently under

3   the care of a doctor in the Santa Barbara clinic.  Mr. White applied for social

4   security, but his application is still pending.  Currently he receives an income of

5   $91.00 per month from General Relief.  Mr. White believes that he will be

6   excluded from Casa Esperanza after April 1, 2009 because of the demand for

7   medical beds.  If excluded from the Casa, Mr. White will try to find a bed at the

8   Santa Barbara Rescue Mission, where he has stayed previously.  However, the

9   Rescue Mission allows him to stay only ten days at a time.  Mr. White would then

10   have to sleep outdoors, and he is fearful of being attacked because he knows other

11   homeless people who have been attacked when sleeping outside.

12       18.    Plaintiff James Toohey is a fifty-two year old homeless man who has

13   been a resident of Santa Barbara County since 2004, and is currently staying in a

14   medical bed at Casa Esperanza.  Mr. Toohey has been homeless since 2004, when

15   he was severely injured in a motorcycle accident and was unable to continue his

16   employment as a licensed guard.  Although at first Mr. Toohey was able to sleep

17   in his car, the car was impounded nine months ago and he was not able to pay to

18   collect it.  Mr. Toohey then slept on the beaches outside, where he seriously

19   injured his right foot, necessitating a hospital stay of about twenty days.  The

20   hospital discharged Mr. Toohey directly to Casa Esperanza where he was placed

21   in a medical bed.  However, he fears that he will be excluded from Casa

22   Esperanza after April 1, 2009 due to the demand on medical beds, and will have

23   no option but to return to sleeping outside.

24                              **Defendants**

25       19.    Defendant City of Santa Barbara is a municipal corporation,

26   organized under the Charter of the City of Santa Barbara as a city under the laws

27   of the State of California, with the capacity to sue and be sued.  Defendant City is

28   the legal and political governmental entity responsible for the actions of the Police

1    Department, its officials, its agents, and its employees. Defendant City is sued in
2    its own right and on the basis of the acts of its officials, agents, and employees,
3    including the Police Department.

4          20.    Defendant Santa Barbara Police Department provides law
5    enforcement services in Santa Barbara and enforces the City's municipal code.

6          21.    Each of the acts complained of was undertaken and each violation of
7    Plaintiffs' rights occurred pursuant to the unlawful policies, practices, and
8    customs of Defendants.

9          22.    Each Defendant was acting on behalf of the City or at the direction of
10    another Defendant on the City's behalf.

11          23.    The acts of each Defendant were authorized, ratified, and/or
12    condoned by the relevant policy makers for Defendant City.

13          24.    Thus, each of the complained violations of law, were intentionally
14    committed by Defendants, their officials, agents, and employees, acting under
15    color of law.

16                            **CLASS ALLEGATIONS**

17          25.    Plaintiffs seek to have a class certified under Rule 23(b)(2) of the
18    Federal Rules of Civil Procedure.

19          26.    The class represented by the individual plaintiffs is defined as the
20    class of all persons who (a) are homeless within the meaning of federal law; (b)
21    have a disabling condition, defined as a diagnosable substance use disorder,
22    serious mental illness, developmental disability, or chronic physical illness or
23    disability, including the co-occurrence of two or more of these conditions; (c) on
24    or after April 1, 2009, will not be able to be housed at Casa Esperanza; and (d)
25    will therefore be subject to law enforcement action by Defendants pursuant to City
26    and State laws prohibiting sleeping and camping in public places.

27          27.    The class is so numerous that joinder of all members is impractical.
28    Plaintiffs believe that more than 200 individuals have been temporarily housed for

1   some period of time from December 2008 through the present at Casa Esperanza,

2   and may not have shelter after April 1, 2009 when the 200 emergency shelter beds

3   are closed.  Moreover, because the nature of being homeless means that homeless

4   individuals have no fixed shelter or residence, it is impractical to locate and

5   identify all class members for individual suit.  There are questions of law and fact

6   in common to all members of the class.  The claims of the representative parties

7   are typical of the claims of the class members.  The representative parties will

8   fairly and adequately represent the interests of the class.

9        28.    Defendants' policy and practice will affect all members of the class

10   in similar ways, thereby making injunctive and declaratory relief appropriate to

11   the class as a while.

12       29.    The common questions of law to be determined are whether

13   Defendants' policies, practices, and customs of subjecting homeless individuals to

14   citation, harassment, and intimidation for sleeping in public places when there is

15   no available alternative shelter, violates the rights of class members under the

16   Eighth, Fourteenth, Fourth, and Fifth Amendments to the United States

17   Constitution.  These questions of law are common to all members of the class and

18   predominate over any question affecting individual class members.

19       30.    The class representatives know of no conflict of interest among class

20   members.  Plaintiffs are represented by the attorneys shown on the caption page of

21   this complaint, including the Legal Director of the ACLU Foundation of Southern

22   California and private counsel, all of whom are experienced civil rights attorneys,

23   who will vigorously prosecute this action.

## STATEMENT OF FACTS

### Homelessness In Santa Barbara

26       31.    In 1984, the homeless population in Santa Barbara was estimated at

27   1,500 in the City and 3,883 countywide.  At that time, six recommendations were

28   made to the City and County of Santa Barbara in a Homeless People Project

1   Report, including that "[t]he City and County declare a moratorium on
2   enforcement of illegal sleeping and camping ordinances" and that "[t]he City and
3   County designate some area where the homeless may camp without threat of
4   arrest or harm."  Upon information and belief, the City did not implement either of
5   these recommendations.

6         32.    Over the next two decades the City encouraged the conversion of
7   Single Resident Occupancy (SRO) hotels used by the indigent population of the
8   City into tourist destination hotels which are no longer affordable to indigent
9   residents.  This resulted in the removal of more than 350 SRO rooms from the
10  City by the year 2004 and has greatly increased the number of indigents unable to
11  afford overnight shelter in the City.  These rooms were heavily used by the
12  chronically homeless.  In recognition of this problem, in 2006, the California
13  Coastal Commission ordered the City Redevelopment Agency, as a condition of
14  approval of the conversion of another affordable hotel pursuant to the La Entrada
15  Project, to create an "Overnight Accommodation Mitigation Fee" to be used to
16  assist indigents in obtaining affordable housing.  At present, this fund has more
17  than $1,147,000 available for this purpose but, upon information and belief, to
18  date the City has not expended any of this money for its intended purpose.

19        33.    More than two decades later, the County of Santa Barbara
20  commissioned a health care consultant to complete a Report on Homelessness
21  Services In the County of Santa Barbara ("2006 Report").  This 2006 Report
22  estimates that Santa Barbara County has more than 6,000 homeless individuals.
23  One third suffer from mental illness; more than twenty percent are veterans;
24  fifteen percent are families; and fifteen percent are single women.  These
25  homeless individuals are "at great risk of harm resulting from beatings, robbers,
26  and rape," and, over a period of eight months when tracking was done, 26
27  homeless men and women "died on the streets."  A February 2009 report by the
28  Santa Barbara City Council Subcommittee on Homelessness and Community

1  Relations "acknowledges the strong need for more shelter beds for vulnerable
2  populations."

3      34.    Despite the 2006 Report's recognition that "[m]ost homeless persons
4  do not choose to be homeless," the anti-sleeping and anti-camping ordinances
5  recommended for repeal in 1984 are still in full effect and are actively enforced
6  against homeless residents of Santa Barbara.

7      35.    Chronically homeless individuals such as Plaintiffs make up
8  approximately 10 to 15 percent of the total homeless population, and the 2006
9  Report found that they "generally live on the streets; they congregate & sleep in
10  parks, under bridges, in door ways & other public places." As the Report
11  recognized, these individuals do not do so because of a choice: they do so because
12  they have no alternative.

### Casa Esperanza

14      36.    Casa Esperanza, located at 816 Cacique Street in the City of Santa
15  Barbara, operates as a homeless shelter pursuant to a Conditional Use Permit
16  granted by the City.  The shelter operates as a public-private partnership that is
17  run by a non-profit, licensed by the City, and employs both private and public
18  employees.

19      37.    The terms of the Conditional Use Permit state that four months of the
20  year, from December through March, Casa Esperanza is permitted to operate a
21  cold weather shelter with a monthly average of no more than 200 beds and a
22  maximum of 230 beds.  During those months, Casa Esperanza does not use
23  exclusionary criteria when providing homeless individuals with beds, meaning
24  that there are no requirements that people be able to participate in programming or
25  need emergency medical services.  Services provided during that time include
26  meals, hygiene services (showers, laundry), access to a social workers, and
27  medical support including a medical clinic and prescriptions.  Casa Esperanza
28  does not require individuals housed there to leave during the day; rather, it offers

1   residents the use of a day room and an outside area.  This means that while

2   individuals are housed at Casa Esperanza, they have reliable access to crucial

3   services and somewhere to find shelter at night and during the day.  Plaintiffs are

4   currently housed and receive services at Casa Esperanza as part of its winter

5   shelter.

6       38.   During the other eight months of the year (April-November), Casa

7   Esperanza is permitted to operate only 100 beds as transitional housing.  Of these

8   100 beds, 30 are designated to be medical emergency beds, and 70 beds are

9   designated for "transitional homeless" who are "willing and capable of achieving

10  self-sufficiency."  "Transitional homeless" is defined as persons who are

11  "episodically homeless" including individuals and families who become homeless

12  in times of economic hardship or suffer temporary housing loss.  Essentially, these

13  70 beds are limited only to those individuals capable of participating in the job

14  and rehabilitation programming offered at the shelter, and are not targeted to be

15  accessible to the chronically homeless population such as Plaintiffs.

16      39.   The 30 medical beds are consistently full, meaning that the medical

17  staff at Casa Esperanza are constantly forced into the position of having to decide

18  which homeless individuals have the most acute medical needs and relegating

19  those with less acute medical needs to the streets.   The individuals who are placed

20  in the 30 medical beds are often homeless individuals needing urgent medical care

21  and follow-up who are discharged directly from the City hospital to the shelter.

22  This means that during the eight months from April through November,

23  individuals with chronic medical conditions such as diabetes or individuals with

24  less acute conditions such as a broken leg in a cast may not have access to medical

25  beds at the shelter.  Those who are in medical beds, including some of the

26  Plaintiffs, are always at risk that they will lose the beds at any time to someone

27  who is a higher medical priority.

28

40.    Conditions on the streets of Santa Barbara are dangerous for homeless individuals in general, and are particularly hazardous for individuals such as Plaintiffs, who have chronic medical and mental health conditions.  For example,  unlike at Casa Esperanza, on the streets, homeless individuals do not have access to basic hygiene services.  Diseases are accelerated because of the constant stress living on the streets places on the body.  The lack of stability of a place to sleep and live makes it more difficult for individuals with medical and/or mental health disabilities to access necessary treatment.  These individuals are also especially vulnerable to predatory behavior on the streets.

41.    On April 1, 2009, because of the City's restrictions in the conditional use permit, over one hundred  users of Casa Esperanza's emergency shelter, including Plaintiffs, will be left without beds.  They will have no alternative to sleeping on the streets or in other public places.  The City of Santa Barbara does not offer sufficient alternative placements for its chronically homeless residents.

42.    The effect of the closure of winter shelter beds at Casa Esperanza will be exacerbated because the Salvation Army has reported that at approximately the same time, it will be closing its adult rehabilitation program in Carpinteria.  Carpinteria is approximately thirteen miles from Santa Barbara.  The loss of beds from the closure of the Salvation Army program is reported to be 86 beds, and this is likely to increase the demand and competition for shelter beds in the City of Santa Barbara.

### The City's Criminalization of Homelessness

43.    Santa Barbara Municipal Code ("SBMC") § 15.16.085 makes it unlawful "for any person to sleep: 1.  In any public beach during the period of time from one-half hour after sunset to 6:00 A.M. 2.  In or on any public street or sidewalk or in or on City walkways, paseos, boardwalks, or other public ways intended for pedestrian or vehicular use and owned or maintained by the City. 3.

12

1  On the grounds of City owned or maintained buildings, facilities or other

2  improved City property." This is the City's "anti-sleeping ordinance." SBMC §

3  15.16.070 makes it unlawful for any person to camp in any public park, any public

4  street, any public area, or on any public beach.

5       44.   The time limits set by the anti-sleeping ordinance deliberately target

6  those who, as a consequence of their disability and poverty, cannot otherwise

7  obtain and maintain housing. The Police Department conducts sweeps to locate

8  homeless individuals who are sleeping on beaches, streets, sidewalks, or other

9  areas covered by SBMC § 15.16.085 and § 15.16.070. At times, these

10 enforcement sweeps result in the chronically homeless, including some Plaintiffs,

11 being startled from sleep by Police officers shining flashlights in their faces and

12 demanding identification. Uniformed Santa Barbara Police officer(s) also

13 approach and photograph apparently homeless people even when such persons are

14 engaged in lawful activities in the City parks and public spaces.

15      45.   The City, through the Police Department, has in the past and

16 continues to aggressively enforce these ordinances against homeless residents

17 including Plaintiffs in Santa Barbara. In addition to issuing citations under the

18 ordinances, Police officers also use the ordinances as justification for harassing

19 homeless residents, and conducting unwarranted stops of homeless residents that

20 result in interrogations, demanding identification, running warrant checks, and

21 carrying out unauthorized searches and arrests. Although the Police Department

22 officers principally rely on the SBMC ordinances, which make criminals of the

23 chronically homeless, they also rely on Penal Code provision 647(e), which makes

24 it a misdemeanor to "lodge[] in any building, structure, vehicle, or place, whether

25 public or private, without the permission of the owner or person entitled to the

26 possession or in control of it."

27      46.   Penalties for violating the SBMC ordinances are substantial,

28 especially for chronically homeless individuals such as Plaintiffs. Violations can

13

1   be cited either as infractions or misdemeanors.   Penalties for an infraction, which

2   is the lesser of the two, include the issuance of a citation and a fine, and

3   individuals have no right to counsel.  Not only do disabled homeless individuals

4   such as Plaintiffs lack the means to pay the fines, but the lack of alternative places

5   to sleep means that they will continue to receive citations and fines.  For example,

6   Plaintiff James Ryden at one time owed more than $1,100 in such fines.  Accrual

7   of citations and fines can affect individuals' ability to renew driver's licenses and

8   receive state benefits.  Accrued citations or the failure to appear at citation or

9   misdemeanor hearings can lead and has led to the issuance of an arrest warrant

10   and incarceration, as it did for Plaintiff Rodnie Ewing.  An arrest for a homeless

11   individual is particularly devastating because it results not only in loss of liberty,

12   but may also result in the loss of all possessions, including warm clothing and

13   critically important documents necessary for identification and government

14   benefits.

15       47.    Defendants' illegal policies and practices are directed at and

16   motivated by Plaintiffs' involuntary status of chronic homelessness which, for

17   many individuals in the Plaintiff class, directly results from their mental and/or

18   physical disabilities.  Defendants' inhumane and unconstitutional conduct

19   includes:

20       • the criminalization of sleeping, an involuntary and necessary human

21           process, in all public places at night;

22       • the canvassing of beaches, parks, and other public places at night and

23           in the early morning to wake sleeping homeless persons for the

24           purpose of harassment, threat, and intimidation, and which

25           sometimes results in the loss of property of persons forced to move

26           from the locations where they are sleeping;

27       • the selective enforcement of local ordinances and criminal laws

28           directly targeted against homeless persons;

14

- photographing of the persons and activities of homeless persons for the purpose of intimidation;

- the conducting of unwarranted and unjustified stops of homeless persons that result in interrogations, demands for identification, warrant checks, unauthorized searches of their persons, possessions, and property, and arrests; and

- the confiscation of property of homeless persons, including critical identification and other government documents.

48.     Homeless individuals in Santa Barbara are overrepresented in the City and County's criminal justice systems.  The 2006 Report cites statistics showing that in 2005, twenty to twenty-five percent of the jail population were homeless individuals.  Ninety percent had substance abuse issues and up to eighteen percent were being treated for mental illness.  The Report identified a "lack of alternative facilities to care for the alcoholic, substance abuser or mentally ill" and found that "[t]here are a limited number of beds for the mentally ill homeless and chronic alcoholics & substance abusers.  The jail has become the largest in-patient psychiatric and detox facility in the county.  The homeless do not receive rehabilitation in the jail."  The Report also found that "the 5 officers and the sergeant [assigned to Downtown and Beachfront area] devote approximately 70% of their time to Municipal Code violations and other issues associated with chronically homeless people."

49.     Ultimately, the City of Santa Barbara and its law enforcement treat the chronically homeless, including Plaintiffs, as if they were essentially outlaws, assuming that they are involved in criminal activity, and selectively enforcing local ordinances and criminal laws so as to harass and intimidate these mentally and/or physically disabled chronically homeless residents.  It is the practice of the City that citations issued to the homeless population for alleged violations of City ordinances are not reviewed by the City Attorney for appropriateness.  Such

15

1  charges are almost universally filed as infractions for the reason that such level of

2  prosecution does not allow the indigent accused the right to the services of

3  appointed counsel.  The City's practice and custom thus allows and encourages

4  Police officers to charge offenses incorrectly and without sufficient factual basis

5  to justify a conviction upon trial, knowing that in such cases the indigent accused

6  will be unlikely to contest such cases.  And, despite official City

7  acknowledgement that there is not sufficient shelter for the homeless, City Police

8  continue to issue citations to persons unable to find alternatives to sleeping in

9  public places.   Upon information and belief, the City has adopted these practices

10  to actively discourage homeless people such as Plaintiffs from being visibly

11  present in Santa Barbara.

### The City's "Strategies" to "Address" Homelessness are Aimed At Reducing The Visibility Of Homeless Individuals in the City Rather Than Reducing Homelessness

15       50.    Although the City of Santa Barbara purports to be affirmatively

16  addressing issues of homelessness in the City, its efforts are aimed at minimizing

17  homeless persons' effects on the City's image, businesses, and tourism, rather

18  than assisting homeless individuals.

19       51.    Most recently, on February 24, 2009, the Santa Barbara City Council

20  approved recommendations contained in a subcommittee report titled "Strategies

21  to Address Community Issues Related to Homelessness in the City of Santa

22  Barbara."  These recommendations include additional law enforcement measures

23  to further target the homeless community, including recommendations to adopt "a

24  City ordinance that is more restrictive on solicitation" and expand law

25  enforcement coordination to more severely prosecute "violations of open

26  container offenses and other municipal code violations, such as aggressive

27  panhandling, in certain specific areas of the City."  In fact, the first five

28  recommendations are aimed at "curbing" the "negative behavior" the City

16

1  associates with homeless individuals including panhandling and solicitation.   One

2  City councilman stated publicly at a recent meeting that "[t]he one thing that these

3  homeless people respond to is the threat of jail."

4       52.   The sixth recommendation approved on February 24, 2009,

5  addresses the question of modification of the conditional use permit for Casa

6  Esperanza, and  recommends not that the permit be modified, but rather that

7  shelter service providers "assess the potential impact on the neighborhood and

8  identify mitigation strategies."  The recommendation further notes that "[w]hile

9  Casa Esperanza has had a positive impact in the city-wide effort to end the

10  problem of homelessness, the Milpas area neighborhood has been negatively

11  impacted by the presence of the shelter and an increase in the number of year

12  round beds may exacerbate this impact."  The recommendation immediately

13  following proposes the use of public funds not for additional shelter beds, but for

14  capital improvements in the area near the shelter "to mitigate the impact of

15  homelessness."

16       53.   In contrast to the paucity of resources the City allocates to assist its

17  homeless residents, Santa Barbara is one of the wealthiest cities in California and

18  the country, with median home prices at almost $1 million, five times the national

19  average.  The average rent for a one bedroom apartment is $1200 per month.  The

20  City's website notes that Santa Barbara is sometimes referred to as the "American

21  Riviera," and touts the City's " beautiful beaches, majestic mountains and colorful

22  culture" that make Santa Barbara "a premier resort destination."   However, the

23  City's miserly approach to homelessness makes clear that the City views Plaintiffs

24  and other disabled homeless residents as a blight on its pristine landscape,

25  prohibiting them even from sleeping, an involuntary action and basic necessity of

26  life.

27       54.   The City's needless and senseless closure of the winter beds at Casa

28  Esperanza, combined with its recent approval of recommendations that further

1  criminalize and punish the homeless, are ample evidence that the priority of the

2  City is erasing the homeless rather than homelessness.

3  ### CAUSES OF ACTION

4  ### First Claim For Relief

5  **(Violation of the Fourteenth Amendment,**

6  **Equal Protection; all Plaintiffs against all Defendants)**

7  55.   Plaintiffs reallege and incorporate by reference each and every

8  allegation set forth in paragraphs 1 through 54, herein, as if fully alleged.

9  56.   The acts and omissions of Defendants, and each of them, as described

10  herein, violate the constitutional rights of Plaintiffs under the Equal Protection

11  Clause of the United States Constitution.  The violations include deliberate and

12  selective enforcement of criminal laws, including Santa Barbara Municipal Code

13  § 15.16.085, to harass and intimidate impoverished and disabled persons with no

14  alternative but to sleep in public places.  Defendants have no legitimate

15  government interests in the deliberate and selective enforcement of criminal laws

16  against impoverished and disabled homeless persons with no alternative but to

17  sleep somewhere in the City.

18  ### Second Claim For Relief

19  **(Violation of the Fourteenth Amendment,**

20  **Due Process; all Plaintiffs against all Defendants)**

21  57.   Plaintiffs reallege and incorporate by reference each and every

22  allegation set forth in paragraphs 1 through 56, herein, as if fully alleged.

23  58.   The acts and omissions of Defendants, and each of them, as described

24  herein, deny the constitutional rights of Plaintiffs under the Due Process Clause of

25  the United States Constitution.  The violations deprive impoverished and disabled

26  persons the opportunity and ability to carry out the basic necessities of life and

27  liberty such as sleeping, as well as to enjoy the right of free movement.

28  Defendants' harassment, threats, and citations against these homeless persons for

18

1  remaining and sleeping in the only place available, outdoors, violate Plaintiffs' due

2  process rights.

### Third Claim For Relief

**(Violation of the Eighth Amendment and Fourteenth Amendments;**

**all Plaintiffs against all Defendants)**

6  59.   Plaintiffs reallege and incorporate by reference each and every

7  allegation set forth in paragraphs 1 through 58, herein, as if fully alleged.

8  60.   The acts and omissions of Defendants, and each of them, violate the

9  rights of all Plaintiffs to be free from actual or threatened cruel and unusual

10  punishment.  By virtue of their involuntary status as homeless and disabled, and

11  the insufficiency of shelter availability in Santa Barbara, Plaintiffs have no way to

12  comply with the laws Defendants have sought and continue to seek to enforce

13  against them, in particular Santa Barbara Municipal Code § 15.16.085.

### Fourth Claim For Relief

**(Violation of the Fourth and Fourteenth Amendments;**

**all Plaintiffs against all Defendants)**

17  61.   Plaintiffs reallege and incorporate by reference each and every

18  allegation set forth in paragraphs 1 through 60, herein, as if fully alleged.

19  62.   The acts and omissions of Defendants, and each of them, violate the

20  rights of Plaintiffs to be free from illegal searches and seizures as guaranteed by

21  the Fourth and Fourteenth Amendments to the United States Constitution.

### Fifth Claim For Relief

**(Violation of the Fifth and Fourteenth Amendments;**

**all Plaintiffs against all Defendants)**

25  63.   Plaintiffs reallege and incorporate by reference each and every

26  allegation set forth in paragraphs 1 through 62, herein, as if fully alleged.

27  64.   The Fifth Amendment of the Constitution of the United States

28  prohibits the taking of private property for public use without just compensation.

65.     The acts and omissions of Defendants, and each of them, including, without limitation, the taking of personal possessions belonging to the Plaintiffs without adequate compensation violate rights secured under the Fifth and Fourteenth Amendments of the United States Constitution.

### Sixth Claim For Relief

**(Violation of the Americans With Disabilities Act, 42 U.S.C. § 12132; all Plaintiffs against all Defendants)**

66.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in paragraphs 1 through 65, herein, as if fully alleged.

67.     In 1990, Congress enacted the Americans with Disabilities Act, 42 U.S.C. §§ 12101 – 12181 ("ADA"), in order to secure and advance the civil rights of people with disabilities.  The Congressional intent in enacting the ADA is "the elimination of discrimination against individuals with disabilities."  (42 U.S.C. § 12101(b)(1).)  Congress thus found that "historically, society has tended to isolate and segregate individuals with disabilities," and that these forms of discrimination "continue to be a serious and pervasive social problem."  (42 U.S.C. § 12101(a)(2).)  It determined too that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic sufficiency for such individuals."  (42 U.S.C. § 12101(a)(8).)

68.     Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, *or be subjected to discrimination* by any such entity." (42 U.S.C. § 12132 (emphasis added).)

69.     The acts and omissions of Defendants, and each of them, including harassment and intimidation, the issuance of reprimands and citations, and making and threatening arrests for conduct, including sleeping in public places, which is

1  not criminal, but the result of disability within the meaning of the ADA, violate

2  the rights of Plaintiffs under the ADA.

3  ## ACTUAL CONTROVERSY

4      70.    There exists an actual controversy between Plaintiffs and Defendants

5  as to each and every Claim for Relief alleged herein.  Plaintiffs have suffered and

6  will suffer ongoing and continuous injuries so long as the City continues its

7  practice of citing and harassing homeless persons.  These controversies warrant

8  judicial determinations.  Absent relief from this Court, Plaintiffs will suffer

9  irreparable injury as a consequence of Defendants' unconstitutional and illegal

10  acts and omissions.

11  ## REQUEST FOR RELIEF

12      Plaintiffs request relief as follows:

13      1.    A preliminary injunction and a permanent injunction, enjoining

14  Defendants, their officers, agents, and employees, from enforcing Santa Barbara

15  Municipal Code § 15.16.085 and § 15.16.070 against individuals who have no

16  practical way to comply with it by virtue of their homelessness, illness, or

17  disability;

18      2.    For a declaration that Defendants' past, present, and threatened future

19  actions violate Plaintiffs' rights to be free from cruel and unusual punishment

20  under the Constitution of the United States;

21      3.    For a declaration that Defendants' past, present, and threatened future

22  actions violate Plaintiffs' rights to be free from equal protection violations under

23  the Constitution of the United States;

24      4.    For a declaration that Defendants' past, present, and threatened future

25  actions violate Plaintiffs' rights to be free from due process violations under the

26  Constitution of the United States;

27

28

1    5.    For a declaration that Defendants' past, present, and threatened future

2  actions violate Plaintiffs' rights to be free from illegal search and seizure under

3  the Constitution of the United States;

4    6.    For a declaration that Defendants' past, present, and threatened future

5  actions violate Plaintiffs' rights to be free from discrimination under the ADA;

6    7.    For a declaration that Defendants' past, present, and threatened future

7  actions violate Plaintiffs' rights to be free from illegal takings under the

8  Constitution of the United States;

9    8.    For costs of suit pursuant to 28 U.S.C. § 1920 and 42 U.S.C. § 1988,

10  as well as the analogous provisions of California law;

11    9.    For attorneys' fees pursuant to 42 U.S.C. § 1988; and

12    10.    For such other relief as this Court deems just and proper.

13

14                              Respectfully submitted,

15

16

17  Dated:  March 5, 2009

                    Mark Rosenbaum

18

19

20                    Lori Rifkin
                    ACLU OF SOUTHERN CALIFORNIA

21

22                    Glen Freeman Mowrer
                    COMMITTEE FOR SOCIAL JUSTICE

23

24                    Joseph D. Allen
                    Attorney at Law

25

26

27

28

                              22

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES RYDEN, RODNIE EWING, MICHAEL WHITE, JAMES TOOHEY, et al., <br><br> PLAINTIFF(S) <br><br> v. <br><br> CITY OF SANTA BARBARA, SANTA BARBARA POLICE DEPARTMENT, <br><br><br> DEFENDANT(S). | CASE NUMBER <br><br> CV09-1578 SVW (SSx) <br><br><br><br> **SUMMONS** |

TO:    DEFENDANT(S):  CITY OF SANTA BARBARA, SANTA BARBARA POLICE DEPARTMENT,

A lawsuit has been filed against you.

Within __20__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _please see attached_____, whose address is _____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ____MAR - 6 2009____

By: _Natalie Gongoria_
                                    Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

Plaintiffs' attorneys' information for service of Defendants answer or motion:

MARK ROSENBAUM
Email:  mrosenbaum@aclu-sc.org
LORI RIFKIN
Email: lrifkin@aclu-sc.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017
Tel: (213) 977-9500


GLEN FREEMAN MOWRER
Email:  glenmowrer@cox.net
COMMITTEE FOR SOCIAL JUSTICE
1231 Manitou Lane
Santa Barbara, CA 93101
Tel:  (805) 563-0350


JOSEPH D. ALLEN
Email:  josephallen@josephallenattorneyatlaw.com
Attorney at Law
110 East De La Guerra Street, Suite A
Santa Barbara, CA 93101
Tel:  (805) 892-2480

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
JAMES RYDEN, RODNIE EWING, MICHAEL WHITE, and JAMES TOOHEY, individually, and on behalf of all those similarly situated

**DEFENDANTS**
CITY OF SANTA BARBARA, SANTA BARBARA POLICE DEPARTMENT

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

please see attached

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes   ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes   ☐ No   ☐ **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
please see attached

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | IMMIGRATION | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

## CV09-1578

**FOR OFFICE USE ONLY:** Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
#### CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:**  Have any cases been previously filed in this court that are related to the present case?  ☑ No   ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)    ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:**  (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐    Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| please see attached | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐    Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Santa Barbara | |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
   Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Santa Barbara | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER):  _____    Date  3-5-09

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program.  (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |

(b) Attorneys

MARK ROSENBAUM (SBN 59940)
Email: mrosenbaum@aclu-sc.org
LORI RIFKIN (SBN 244081)
Email: lrifkin@aclu-sc.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017
Tel: (213) 977-9500
Fax: (213) 977-5297

GLEN FREEMAN MOWRER (SBN 40254)
Email: glenmowrer@cox.net
COMMITTEE FOR SOCIAL JUSTICE
1231 Manitou Lane
Santa Barbara, CA 93101
Tel: (805) 563-0350
Fax: (805) 563-0350

JOSEPH D. ALLEN (SBN 48922)
Email: josephallen@josephallenattorneyatlaw.com
Attorney at Law
110 East De La Guerra Street, Suite A
Santa Barbara, CA 93101
Tel: (805) 892-2480
Fax: (895) 892-2470


VI. Cause of Action
Amend. 4, 5, 8, 14 of U.S. Constitution; Americans With Disabilities Act, 42 U.S.C. § 12132;
civil suit for injunctive and declaratory relief for violation of equal protection, due process, and
right to be free from cruel and unusual punishment


IX. Venue
All named Plaintiffs reside in the County of Santa Barbara

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Stephen V. Wilson and the assigned discovery Magistrate Judge is Suzanne H. Segal.

The case number on all documents filed with the Court should read as follows:

## CV09- 1578 SVW (SSx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division** | **[ ] Southern Division** | **[ ] Eastern Division** |
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)      NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY